# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LUCIO CORRALES<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>ELITE CABLE COMMUNICATIONS, LLC,<br><br>　　　　Defendant. | Case No. 19-cv-7660<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lucio Corrales worked as a technician for Defendant Elite Cable Communications, LLC, installing telephone and internet for third-party Comcast's customers. After Plaintiff sustained an injury on the job, he went on leave and filed a worker's compensation claim before ultimately returning to work about five months after his accident. He claims now that Defendant discriminated against him in violation of the Americans with Disabilities Act (ADA) and terminated him in retaliation for filing his worker's compensation claim in violation of Illinois law. Defendant moves for summary judgment [28]. For the reasons explained below, this Court grants Defendant's motion.

1

I.  **Background**[1]

   A.  **Plaintiff's Employment**

Defendant Elite Cable performs installation services for Comcast and employs technicians to conduct the installs. [29] at ¶¶ 1, 2. Plaintiff worked for Defendant from 2008 until March 2019 as a technician, installing cable telephone services and internet for Comcast customers. *Id.* at ¶¶ 3, 6. During Plaintiff's employment with the company, Defendant's general manager, Owen Kim, served as his supervisor. *Id.* at ¶¶ 4, 5.

Working for Defendant required Plaintiff to acquire a "badge" from Comcast to work in customers' homes. *Id.* at ¶ 25. If Comcast revoked the badge, a technician could no longer perform services for Defendant. *Id.* at ¶ 26.

   B.  **Plaintiff's Accident and Return to Work**

In March 2018, Plaintiff sustained injuries to his head, left hand, and neck as a result of an on-the-job automobile accident. [33] at ¶ 36. Plaintiff contacted Kim right after the accident, and Kim told him to go to the hospital. *Id.* at ¶ 37. Plaintiff subsequently stopped working until August 2018 to attend therapy. [29] at ¶ 8.

Plaintiff filed for worker's compensation, and the Illinois Worker's Compensation Commission approved a settlement of his claim on December 10, 2018.

---

[1] This Court takes these facts from Defendant's Statement of Facts [29] and Plaintiff's Response to Defendant's Statement of Facts and Additional Facts [33]. Because Defendant did not respond to Plaintiff's Additional Facts, this Court deems those facts admitted, [33] at ¶¶ 36–62; *see Tabiti v. LVNV Funding, LLC*, No. 13-CV-7198, 2019 WL 1382235, at *2 (N.D. Ill. Mar. 27, 2019).

[33] at ¶¶ 39, 41. Plaintiff returned to work on August 15, 2018 "with no restrictions from his injuries." [29] at ¶ 9. Prior to his injury, Plaintiff worked five to six days a week; after his return to work, Plaintiff worked six days a week. *Id.* at ¶¶ 15, 16. According to Plaintiff, after his injury, he received fewer jobs and noticed that less experienced technicians received more jobs. [33] at ¶ 17. Plaintiff also claims that Kim stopped talking with him, and "everyone who was friendly was now just quiet towards him." *Id.* at ¶ 44.

Notwithstanding, Plaintiff never advised Kim that he perceived he was being treated differently. [29] at ¶ 19. His pay also remained the same. *Id.* at ¶ 18. Kim himself testified that he did not see anyone treat Plaintiff differently after he returned to work from his injury. *Id.* at ¶ 20. In any event, it is Comcast, not Defendant, who assigns jobs to technicians. *Id.* at ¶ 21.

### C. Plaintiff's Termination

At some point after Plaintiff's return to work, Comcast determined that Plaintiff likely made false reports about customers not being home when, in fact, they were available at their residences. *Id.* at ¶ 29. On or about March 21, 2019, Comcast advised Defendant it was revoking Plaintiff's badge and that he could no longer perform services for Comcast. *Id.* at ¶ 30. Plaintiff testified that in March 2019, his supervisor Owen Kim terminated him, advising him that Comcast "had revoked his badge because of his job performance." *Id.* at ¶ 10; [33] at ¶ 58.

Plaintiff currently repairs garages, which requires lifting and climbing ladders. [29] at ¶ 11. He concedes he currently has no disabilities whatsoever and

3

has not advised his current employer that he has a disability. *Id.* at ¶ 13. No doctor has ever diagnosed Plaintiff with a disability. *Id.* at ¶ 14.

### D. Plaintiff's Claims

In 2019, Plaintiff brought a two-count complaint in this Court for ADA discrimination (Count I) and retaliatory discharge for pursuing his worker's compensation claim (Count II). [1]. Defendant moves now for summary judgment on both claims. [28].

## II. Legal Standard

Summary judgment is proper where there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the non-moving party. *King v. Hendricks Cty. Comm'rs*, 954 F.3d 981, 984 (7th Cir. 2020). The non-moving party bears the burden of identifying the evidence creating an issue of fact. *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1021–22 (7th Cir. 2018). To satisfy this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Barnes v. City of*

*Centralia*, 943 F.3d 826, 832 (7th Cir. 2019). Thus, a mere "scintilla of evidence" supporting the non-movant's position does not suffice; "there must be evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

### III. Analysis

Defendant moves for summary judgment on both counts of Plaintiff's complaint. [28]. This Court considers each count in order below.

#### A. Count I: ADA Claim

In Count I of his complaint, Plaintiff alleges that Defendant violated the ADA's prohibition against discrimination by terminating him because of his disability. [1] at ¶¶ 23–34.

The ADA prohibits covered employers from discriminating against "individuals with disabilities." *Sandefur v. Dart*, 979 F.3d 1145, 1151 (7th Cir. 2020) (citing 42 U.S.C. § 12112(a)). To prevail on his ADA claim, Plaintiff must prove that: (1) he was disabled; (2) he was otherwise qualified to perform essential functions with or without reasonable accommodation; and (3) the disability was the but for cause of an adverse employment action. *Castetter v. Dolgencorp, LLC*, 953 F.3d 994, 996 (7th Cir. 2020). Defendant argues that Plaintiff fails to establish the first and third elements of an ADA claim. [28] at 6–7. For the reasons stated below, this Court agrees.

##### 1. ADA "Disability"

On the first element, the ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities," "a record of

5

such impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). Plaintiff argues that the record demonstrates he was totally (albeit temporarily) disabled from the date of his accident in March 2018 through his return to work in August 2018, thus satisfying his burden of proving he was disabled under the ADA. [32] at 7. Even if true, the point lacks relevance. Courts determine whether an individual has an ADA disability "as of the time the employment decision was made." *Bay v. Cassens Transp. Co.*, 212 F.3d 969, 974 (7th Cir. 2000); *see also Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 607 (7th Cir. 2012) (holding that the plaintiff did not have an ADA disability because his medical problems admittedly did not limit his ability to work for the eighteen months leading up to his termination). And nothing in the record suggests that, at the time of Plaintiff's termination in March 2019, Plaintiff had either "a physical or mental impairment that substantially limits one or more major life activities," "a record of such impairment," or was "being regarded as having such an impairment." 42 U.S.C. § 12102(1).

First, Plaintiff offers no evidence of an impairment that "substantially limited" any major life activity from when he returned to work in August 2018 through the date of his termination in March 2019. The evidence actually suggests the opposite: Plaintiff concedes that he returned to work "with no restrictions from his injuries" and worked six days a week, just as he did before his injury. [29] at ¶¶ 9, 15–16.

Nor does Plaintiff present evidence of "a record of such impairment." The mere fact that Plaintiff sustained an injury does not suffice because there exists no other evidence that his injury substantially limited a major life activity in the relevant time

6

period. *See Rooney v. Koch Air, LLC*, 410 F.3d 376, 381 (7th Cir. 2005) (noting that to prevail under "a record of such impairment" theory, the plaintiff must show again that his impairment "substantially limits one or more major life activities," and holding that records of injuries and surgeries, on their own, failed to meet this test) (quoting 29 C.F.R. § 1630.2(k)); *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 510 n.7 (7th Cir. 1998) (noting that the plaintiff must show "a record reflecting the kind of impairment that would impose a substantial limitation on one or more of the plaintiff's major life activities").

The record similarly forecloses an inference that Plaintiff was "being regarded as having such an impairment." To prevail under this theory of disability, Plaintiff must: (1) show that Defendant "believed he was substantially limited in his ability to perform the major life activity of working," *Powers v. USF Holland, Inc.*, 667 F.3d 815, 823 (7th Cir. 2011); and (2) provide proof of "general employment demographics or the approximate number of jobs" from which he "would be excluded because of an impairment," *Povey v. City of Jeffersonville*, 697 F.3d 619, 623 (7th Cir. 2012). There simply is no evidence on either of these points in the record.

Plaintiff's ADA claim thus fails for failure to raise a genuine issue of material fact as to this first element of "disability." This Court finds that Defendant is entitled to summary judgment on Count I on this basis alone.

### 2. Causation

Even assuming a reasonable juror could find Plaintiff "disabled" within the meaning of the ADA, Plaintiff's claim also fails because he cannot show causation on the current record. In assessing causation, this Court asks whether a reasonable

juror could conclude that Plaintiff would have kept his job if he was not disabled, and "everything else had remained the same." *McCann v. Badger Mining Corp.*, 965 F.3d 578, 589 (7th Cir. 2020) (quoting *Graham v. Arctic Zone Iceplex, LLC*, 930 F.3d 926, 929 (7th Cir. 2019)). The law permits Plaintiff to establish causation through direct evidence (in the form of an admission) or circumstantial evidence. *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 504 (7th Cir. 2017). No direct evidence exists in this case, so Plaintiff must show causation through circumstantial evidence. [32] at 8–9. The Seventh Circuit recognizes that circumstantial evidence can include: (1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action. *Monroe*, 871 F.3d at 504 (citing *Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 684 (7th Cir. 2014)).

Plaintiff contends that the record contains all four types of circumstantial evidence. [32] at 8. He suggests that the timing of his termination is suspicious and supports an inference that Defendant fired him due to his disability. *Id.* Initially, he does not explain why the timing was suspicious: he returned to work in August of 2018 and worked without incident until Comcast revoked his badge months later in March of 2019, at which point Defendant fired him. Additionally, even if this timing could be considered suspicious (which it cannot), the Seventh Circuit has held repeatedly that "'suspicious timing alone is rarely enough to survive summary

8

judgment' particularly when 'there are reasonable, non-suspicious explanations for the timing of [the] termination.'" *McCann*, 965 F.3d at 592–93 (quoting *Milligan-Grimstad v. Stanley*, 877 F.3d 705, 711 (7th Cir. 2017)). Here, Defendant has proffered a legitimate reason for Plaintiff's termination: Comcast revoked his badge, [29] at ¶ 30, and Plaintiff could no longer perform work as a technician for Defendant or Comcast, *id.* at ¶ 33. Plaintiff's claim fails on such a factual record.

Plaintiff next suggests that his perception that his coworkers gave him the "silent treatment" establishes circumstantial evidence of "ambiguous behavior." [32] at 8. He fails, however, to point to any evidence that Defendant engaged in such "silent treatment" toward him on account of his disability, and thus, this argument falls well short of identifying circumstantial evidence of discriminatory animus.

Plaintiff also argues that less experienced technicians received more jobs than he did after his return to work in August. *Id.* Yet he does not identify these technicians or otherwise show that they were, in fact, "similarly situated employees" who were not disabled. *See Monroe*, 871 F.3d at 504 (holding that the plaintiff must put forth specific evidence that "*similarly situated employees outside of the protected group* systematically receive better treatment") (emphasis added). Regardless, the record confirms that it is third-party Comcast, not Defendant, who assigned jobs to technicians. [29] at ¶ 21. Accordingly, Plaintiff's receipt of fewer jobs cannot, as a matter of logic, be attributed to any discriminatory animus on the part of Defendant.

Finally, Plaintiff contends that Defendant's proffered reason for terminating him—Comcast's "de-badging" of Plaintiff—is pretextual because Elite has, in the

9

past, reassigned other de-badged technicians to other jobs within the company. [32] at 8. In the ADA context, pretext means something "more than just faculty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action." *Koty v. DuPage County*, 900 F.3d 515, 519 (7th Cir. 2018) (quoting *Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 698 (7th Cir. 2017)); *see also McCann*, 965 F.3d at 589. In assessing pretext, this Court cannot simply second-guess employers' business decisions; rather, it must ask whether "an employer's reason for a termination is without factual basis or is completely unreasonable." *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 646 (7th Cir. 2013); *see also Lauth v. Covance, Inc.*, 863 F.3d 708, 717 (7th Cir. 2017). Even if Defendant had previously reassigned other de-badged technicians to other jobs within the company, Plaintiff provides no evidence to support his claim that Defendant treated him differently because of discriminatory animus, rather than for permissible business reasons. His attempt to demonstrate pretext therefore falls short.

In sum, Plaintiff fails to demonstrate a triable issue of fact as to causation on his ADA claim. Accordingly, and because Plaintiff also fails to demonstrate that he has an ADA "disability," this Court grants summary judgment to Defendant on Count I.

**B.     Count II: Retaliatory Discharge**

In Count II, Plaintiff claims retaliatory discharge, asserting that Defendant illegally fired him for filing a worker's compensation claim. [1] at ¶¶ 35–43.

The retaliatory discharge cause of action "deters employers from presenting their employees with the untenable choice of retaining their jobs or pursuing

10

compensation for their injuries through workers' compensation proceedings." *Brooks v. Pactiv Corp.*, 729 F.3d 758, 767 (7th Cir. 2013). To prove retaliatory discharge, Plaintiff must establish the following three elements: (1) the employer discharged the employee; (2) causation, meaning the employer discharged the employee for filing a workers' compensation claim; and (3) the discharge violates a clear mandate of public policy. *Michael v. Precision All. Grp., LLC*, 21 N.E.3d 1183, 1188 (Ill. 2014). An employer "may defeat the causation element of the claim by showing that the prof[f]erred valid reason for the termination was not pretextual." *Brooks*, 729 F.3d at 768; *see also Hartlein v. Ill. Power Co.*, 601 N.E.2d 720, 728 (Ill. 1992) ("The element of causation is not met if the employer has a valid basis, which is not pretextual, for discharging the employee.").

Plaintiff's retaliatory discharge claim fails because he offers no evidence showing that Defendant terminated him for filing his workers' compensation claim, and conversely, Defendant offers a legitimate reason for Plaintiff's termination. Kim stated that Defendant terminated Plaintiff because Comcast had revoked his badge, [33] at ¶ 58, and the record establishes that a technician could not work as a technician without a badge, [29] at ¶ 26. This evidence demonstrates a non-pretextual reason for Plaintiff's termination, thus defeating his retaliatory discharge claim. This Court grants summary judgment to Defendant on Count II.

## IV. Conclusion

For the reasons explained above, this Court grants Defendant's motion for summary judgment [28]. The Clerk is directed to enter judgment in Defendant's favor. All dates and deadlines are stricken. Civil case terminated.

Dated: May 18, 2021

Entered:

John Robert Blakey
United States District Judge